## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| GRAHAM McARTHUR, | X : | |
| Plaintiff, | : : | Case No. 23-cv-1147 |
| -against- | : : | |
| VENTURE GLOBAL LNG, INC., | : : | JURY TRIAL DEMANDED |
| Defendant. | : : | |
|  | X | |

### COMPLAINT

Plaintiff Graham McArthur ("McArthur" or "Plaintiff"), as and for his Complaint herein against defendant Venture Global LNG, Inc. ("Venture Global", the "Company" or "Defendant"), alleges as follows:

### Nature Of The Action

1.      This is yet another action arising from Venture Global's concerted efforts to wrongfully prevent virtually all of its early officers and advisors from exercising their valuable stock options, but in this case Venture Global is doing so by contending that McArthur's options for an express ten-year term expired before the ten years elapsed.  In particular, Venture Global claims that it unilaterally and without consent shortened the term of the options long after they were granted and vested.  This is expressly prohibited by the subject stock option agreements, which Venture Global has therefore breached in multiple ways, thereby depriving McArthur of the value of his 10-year options to purchase 2,166 shares of Company common stock, now worth approximately $25,000 per share.  Accordingly, MacArthur is entitled to damages totaling

4862-4413-8107, v.1

approximately $49 million.[1]

### The Parties, Jurisdiction and Venue

2.      McArthur is a citizen of the State of Texas, residing in Boerne, Texas.

3.      Upon information and belief, the Company is a corporation organized under the laws of the State of Delaware, with its principal place of business at 1001 19th Street, North Suite 1500, Arlington, Virginia 22209.  Upon information and belief, the Company is a producer of North American liquid natural gas ("LNG").  According to the Company's website, the Company's export facilities, Calcasieu Pass, Plaquemines, CP2 LNG and Delta LNG will supply the world's growing demand for North American energy.

4.      The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because McArthur and Venture Global are citizens of different states.

6.      This Court has personal jurisdiction over the Company because it is a citizen of the Commonwealth of Virginia.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Company resides in this District and a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

### Facts Common To All Claims

**A.      McArthur Joins The Company And Is Granted Ten-Year Stock Options**.

7.      By letter dated December 22, 2014 (the "2014 Option Agreement; Exhibit A hereto), the Company offered McArthur the positions of Vice President and Treasurer.  As incentive for accepting the positions, the Company offered McArthur, among other things, "stock

---

[1] The other two related actions before this Court *are Lindquist v. Venture Global LNG, Inc.*, Case No. 1:23-cv-00879-LMB-JFA and *Muller v. Venture Global LNG, Inc.*, Case No. 1:23-cv-00880-LMB-LRV.

4862-4413-8107, v.1

options (the "Sign-On Option"), equivalent to 1,000 shares of our underlying Series A Common Stock (the "Common Shares").  The exercise price of the Sign-On Option shall be $2,000 per Common Share."  The options would vest quarterly.  (Exhibit A, 2014 Option Agreement p. 2).

8.  McArthur accepted the offer, executed the 2014 Option Agreement, and was thereby granted the Sign-On Option in early January 2015 (*Id.*).

9.  Significantly for purposes of this dispute, the 2014 Option Agreement expressly provides that the Sign-On Option would remain valid for ten years:  "The Sign-On Option shall expire on the ten (10) year anniversary of your commencement of employment" (*Id.*).

10.  Nothing in the 2014 Option Agreement provides that the term of the Sign-On Option would be less than the agreed-to ten years under any circumstances.  To the contrary, the 2014 Option Agreement merely provides that only the *vesting* of the options would be effected by any termination of employment, providing that "[i]f your service to the Company is terminated, any *unvested* portion of the Sign-On Option would expire" (*Id.* (emphasis added)).  There is no mention of any vested options themselves expiring upon termination of employment or at any time period thereafter.  The vested options have a term of ten years, period.

11.  Indeed, the 2014 Option Agreement provides additional protection against the Company retroactively taking steps to diminish the amount, time period or any of McArthur's other rights concerning the Sign-On Option.  In particular, the 2014 Option Agreement provides: "Other than described herein, the Sign-On Option will be subject to all the terms and conditions of the VG LNG 2014 Stock Option Plan [the "2014 Plan"]" (*Id.*).  The 2014 Plan provides that McArthur's rights under the Options may not be impaired without his consent:  "No amendment, suspension or termination of the Plan shall impair rights or obligations under any Award theretofore made under the Plan without the consent of the Grantee thereof" (2014 Plan (Exhibit

3

B hereto) at Section 5.2).

**B.      McArthur Becomes CFO And Is Granted Additional Ten-Year Stock Options**.

12.      By letter dated June 11, 2015 (incorrectly dated as 2014 on the first page) (the "2015 Option Agreement"; Exhibit C hereto), the Company offered McArthur the position of Chief Financial Officer.  As incentive for accepting the position, the Company offered McArthur, among other things, "additional stock options equivalent to 3,000 shares of Common Shares (the 'Additional Options').  The exercise price of the Additional Options shall be $2,000 per Common Share."  The Additional Options would also vest quarterly.  (Exhibit C, 2015 Option Agreement pp. 1-2).

13.      The 2015 Option Agreement, like the 2014 Option Agreement, expressly provides that the Additional Options will remain valid for ten years:  "The Additional Options shall expire on the ten (10) year anniversary of the Effective Date".  The Effective Date is defined as the date of the resignation of the Company's then-current Chief Financial Officer, which is June 15, 2015. McArthur accepted the offer, executed the 2015 Option Agreement, and was thereby granted the Additional Options.  (*Id.* p. 2).

14.      Again, nothing in the 2015 Option Agreement provides that the term of the Additional Options would be less than the agreed-to ten years.  To the contrary, the 2015 Option Agreement merely provides that *vesting* of the options would cease upon termination, providing "[i]f your service to the Company is terminated, any *unvested* portion of the Sign-On Option would expire" (*Id.* (emphasis added)).  There is no mention of any vested options themselves expiring upon termination or a time period thereafter.  The vested options have a term of ten years, period.

15.      Further, the 2015 Option Agreement, like the 2014 Option Agreement, provides additional protection against the Company retroactively taking steps to diminish the amount, time

4862-4413-8107, v.1

period or any of McArthur's other rights concerning the Sign-On Option.  In particular, the 2015 [2015?] Option Agreement provides: "Other than described herein, the Additional Options will be subject to all the terms and conditions of the VG LNG 2014 Stock Option Plan (*Id.*).  And, as the 2014 Plan provides, McArthur's rights under the options may not be impaired without his consent: "No amendment, suspension or termination of the Plan shall impair rights or obligations under any Award theretofore made under the Plan without the consent of the Grantee thereof" (Exhibit B, 2014 Plan at Section 5.2) (the 2014 Option Agreement and the 2015 Option Agreement will be collectively referred to herein as the "Option Agreements"; the Sign-On Option and the Additional Options will be collected referred to herein as the "Options").

**C.    After Vesting In 2,166 Options, McArthur Resigns From The Company And The Company Thanks McArthur For His Valuable Contributions.**

16.    By February 2017, McArthur had vested in 2,166 ten-year Options exercisable through 2025.

17.    By letters dated February 6, 2017, McArthur resigned from the Company.

18.    By letter dated February 15, 2017 (the "February 2017 Letter"; Exhibit D hereto), the Company expressly acknowledged McArthur's dedicated service to the Company and the fact that he had vested in 2,166 Options.

19.    With regard to McArthur's valuable contributions, the Company wrote: "[W]e firstly want to thank you for the dedication and hard work.  We are incredibly grateful for the important contributions you have made to the foundation and growth of the Company  . . . . [W]e would like to reiterate how grateful we are for your service to the Company and, in particular, the personal burden you have borne so graciously to commute to Washington DC from Houston during your tenor.  We want to wish you and your family the very best and hope that you know we will always value our good friendship."  (*See* Exhibit D).

4862-4413-8107, v.1

20.    With regard to the Options, the Company specifically addressed what it considered to be the key issues relating thereto.  Significantly, there is no mention of the remaining ten-year term being affected in any way whatsoever by the McArthur's resignation; rather, only further vesting would cease.  The Company wrote: "In addition, we wish to confirm certain matters related to your vested stock options.  Upon your resignation from the Company, effective as of the close of business on February 17, 201[7] (the 'Resignation Date'), your equity options in the series A Common Stock of the Company (the 'Options') will cease vesting and you will be fully vested in 2166 Options.  From and after the Resignation Date, the Options will continue to be governed by the Company's stock option plan."  (*Id.*).

21.    Thus, the 2,166 vested Options remained valid for a ten-year term, through 2024 and 2025, respectively.

**D.    The Company Wrongfully And Without Legal Basis Purports To Retroactively Shorten The Life Of The Options, Without McArthur's Consent.**

22.    In or about July 2017, several months after McArthur resigned from the Company, the Company began taking the position that it had recently and unilaterally amended the 2014 Plan and thereby shortened the time frame for McArthur to exercise the Options.  In particular, the Company purported to have amended the 2014 Plan such that an employee leaving the Company would only have one year from the date of termination to exercise the employee's options, notwithstanding that the options were expressly for a ten-year term.

23.    There is and was no merit whatsoever for this contention.  First, the Option Agreements expressly provide that the Options are for a ten-year term, and that the Option Agreements take precedence over the 2014 Plan.  Both Option Agreements provide "[*o]ther than as described herein*, the [] Options will be subject to all the terms and conditions of the [2014 Plan]" (emphasis added).  (*See* Exhibits. A and C).  Thus, as an initial matter, the Options

4862-4413-8107, v.1

Agreements themselves, and not any Plan, govern the life of the Options as set forth therein.

24.     Second, and in any event, to the extent the term of the Options is governed by the 2014 Plan, the 2014 Plan, as set forth above, expressly provides that it may not be amended in a manner that would "impair rights . . . under any Award theretofore made under the Plan without consent of the Grantee thereof" (Exhibit B, 2014 Plan at Section 5.2). Shortening the life of the Options by approximately six or seven years would certainly impair McArthur's rights, at the very least. Further, the Company apparently further purported to amend the Plan by adding transfer restrictions that would impair McArthur's rights, such as by adding a Company right of first refusal before McArthur could sell any shares obtained after exercising the Options, and a lock-up provision.

25.     McArthur, of course, did not consent to any of the purported amendments. Accordingly, by letter dated July 11, 2017, McArthur's legal counsel, in an abundance of caution, expressly wrote to the Company to make it clear that McArthur had not and would not so consent: "Mr. McArthur does not consent to any revisions to the [2014] Plan which may impair his rights under awards he received" (Exhibit E hereto).

26.     The Company's counsel responded by letter dated July 21, 2017, purporting to take the position that the Company was somehow entitled to amend the 2014 Plan without McArthur's consent to shorten the life of the Options by six or seven years and add the other restrictions referenced above (the "Company July Letter"; Exhibit F hereto). The letter states that "the Company is fully prepared to defend its position" that its amendment of the 2014 Plan is proper and that McArthur's Options therefore would expire one year after his resignation, or on February 17, 2018 (Exhibit F p. 2). The Company's arguments as set forth in the letter are convoluted, do not state a valid basis, and entirely without any merit whatsoever.

4862-4413-8107, v.1

27.     Perhaps realizing the utter lack of merit in the Company's position, and apparently attempting to avoid litigation or a public dispute, the Company began unilaterally moving back the date it was claiming McArthur's Options expired, but with the Company expressly acknowledging, and expressly without prejudice to, McArthur's position that the Options remained to be valid for a ten-year term and that the other restrictions purportedly added by the Company were ineffective.

**E.     The Company Refuses To Allow McArthur To Exercise The Options, Claiming The Options Expired.**

28.     Recently, the Company's value, upon information and belief, has skyrocketed due to an upsurge in the need for a steady supply of LNG due to global uncertainties and supply shortages, and is now worth in excess of $15 billion.  In particular, upon information and belief, the Company common shares are now worth not less than $25,000 per share (see screen shot showing a valuation by PIMCO, one of the Company's largest shareholders, listing the shares as being valued on its books at approximately $25,000 per share, with 600,000 shares outstanding as of March 2023, at Exhibit G hereto).

29.     Hence, the shares covered by McArthur's Options are worth approximately $49 million ($54,150,000 (2,166 shares x $25,000) less the exercise prices of $2,000 and $3,000 per share (roughly $5 million) = $49 million).

30.     McArthur became aware of the foregoing, as well as the fact that the Company had been recently taking aggressive positions to prevent other option holders from exercising their options.

31.     For these reasons, among others, McArthur believed the time was ripe for him to exercise his Options.  Accordingly, by letter dated April 10, 2023, McArthur advised the Company that he was exercising his Options and asking the Company for information and cooperation to

8

4862-4413-8107, v.1

allow him to do so. (Exhibit H hereto).

32.     By letter dated April 17, 2023, the Company claimed that McArthur's Options had expired, refused to allow him to exercise his Options, and repudiated any and all of its obligations under the Option Agreements and/or the 2014 Plan) (Exhibit I hereto).

## FIRST CAUSE OF ACTION

### (Breach of the Option Agreements and/or 2014 Plan)

33.     McArthur repeats and realleges each and every allegation set forth above as if fully set forth herein.

34.     As set forth above, the Option Agreements and/or the 2014 Plan are enforceable agreements between the parties.

35.     Under the Option Agreements, McArthur is entitled to, and owns, Options covering 2,166 common shares of the Company at exercise prices of $2,000 and $3,000, which, pursuant to the terms of the Option Agreements, he is free to exercise at any time during the remainder of the ten-year term, or until 2025.

36.     Nevertheless, the Company has breached and/or repudiated its obligations under the Option Agreements by refusing to allow McArthur to exercise the Options and/or obtain the 2,166 shares in the Company, and by contending that the Options have expired.

37.     Further, the Company has breached the Option Agreements and the 2014 Plan by purporting to amend the 2014 Plan to shorten the life of the Options and to add other restrictions. First, as set forth above, the Option Agreements expressly provide that the Options are for a ten-year term, and that the Option Agreements take precedence over the 2014 Plan *("[o]ther than as described herein*, the [] Options will be subject to all the terms and conditions of the [2014 Plan]". Thus, as an initial matter, the Options Agreements themselves, and not any Plan, govern the life

9

4862-4413-8107, v.1

of the Options.

38.     Second, as set forth above, the 2014 Plan expressly provides that that it may not be amended in a manner that would "impair rights . . . under any Award theretofore made under the Plan without consent of the Grantee thereof" (Exhibit B, 2014 Plan at Section 5.2).  Shortening the life of the Options by approximately six or seven years impairs McArthur's rights, at the very least.  The other restrictions, such as a right of first refusal and a lock-up provision, further impair McArthur's rights.

39.     McArthur did not consent to any of the purported amendments, which the Company has acknowledged on numerous occasions.

40.     Accordingly, the Company has materially breached the Stock Option Agreements and/or the 2014 Plan.

41.     McArthur has fully performed his obligations under the Option Agreements and/or the 2014 Plan.  In the alternative, McArthur was prevented or frustrated from performing due to the Company's breaches and/or repudiation of the Option Agreements and the 2014 Plan.

42.     The Company's breach and/or repudiation of its obligations under the Option Agreements and/or the 2014 Plan have caused McArthur to suffer damages in an amount to be determined at trial, but believed to be not less than $49 million ((2,166 shares x $25,000) less the exercise prices of $2,000 and $3,000 per share (roughly $5 million) = $49 million).

43.     WHEREFORE, McArthur demands judgment as follows:

    (i)      On the First Cause of Action, awarding McArthur damages in an amount to be determined at trial but not less than $49 million, plus interest, attorneys' fees and costs to the extent allowable by law; and

    (iii)    For such other and further relief as the Court deems just and proper.

10

4862-4413-8107, v.1

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.


Dated:  August 28, 2023

        SULLIVAN & WORCESTER LLP

        By: */s/ Michael T. Dyson*
          Michael T. Dyson (VA Bar No. 40962)
          1666 K Street, NW
          Washington, D.C. 20006
          Telephone:  (202) 775-1217
          Facsimile:   (202) 775-6875
          mdyson@sullivanlaw.com

        Gerry Silver, Esq.
        (seeking admission *pro hac vice*)
        SULLIVAN & WORCESTER LLP
        1633 Broadway, 32nd Floor
        New York, New York 10019
        Telephone:  (212) 660-3096
        Facsimile:   (212) 660-3001
        gsilver@sullivanlaw.com

4862-4413-8107, v.1